IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| KIMBERLY M. SMITH,<br><br>        Plaintiff,<br><br>vs.<br><br>COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>        Defendant. | CASE NO. 1:25-cv-1085<br><br>DISTRICT JUDGE<br>CHARLES ESQUE FLEMING<br><br>MAGISTRATE JUDGE<br>JAMES E. GRIMES JR.<br><br>**REPORT &<br>RECOMMENDATION** |

Plaintiff Kimberly Smith filed a Complaint against the Commissioner of Social Security seeking judicial review of the Commissioner's decision denying supplemental security income. This Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c). The Court referred this matter to a Magistrate Judge under Local Rule 72.2(b)(1) for the preparation of a Report and Recommendation. Following review, and for the reasons stated below, I recommend that the District Court affirm the Commissioner's decision.

**Procedural history**

In October 2022, Smith filed an application for supplemental security income, alleging a disability onset date of August 27, 2021.[1] Tr. 17. In her application, Smith claimed disability due to autism spectrum, depression, and

---

[1] "Once a finding of disability is made, the [agency] must determine the onset date of the disability." *McClanahan v. Comm'r of Soc. Sec.*, 193 F. App'x 422, 425 (6th Cir. 2006).

anxiety. Tr. 308. The Social Security Administration denied Smith's application and her motion for reconsideration. Tr. 139, 148. Smith then requested a hearing before an Administrative Law Judge (ALJ). Tr. 174.

In November 2023 and April 2024, an ALJ held hearings, during which Smith and a vocational expert testified. Tr. 35–79. In May 2024, the ALJ issued a written decision finding that Smith was not disabled. Tr. 17–29. The ALJ's decision became final on April 17, 2025, when the Social Security Appeals Council declined further review. Tr. 1–3; *see* 20 C.F.R. § 404.981.

Smith filed this action on May 28, 2025. Doc. 1. She asserts the following assignments of error:

> 1. Did the ALJ err by creating an RFC that is not supported by substantial evidence and thereafter finding plaintiff not disabled?
>
> 2. Did the ALJ err by overruling plaintiff's objections to VE Lee, failing to properly review VE Heartsill's opinion, and failing to resolve all vocational conflicts?

Doc. 9, at 1.

**Evidence**

*Personal and vocational evidence*

Smith was 28 years old on her disability application date. Tr. 27. She graduated from high school, and at the time of the administrative hearings she was performing part-time work at a YMCA. Tr. 40, 60–61.

*Relevant medical evidence*[2]

Smith saw Licensed Professional Clinical Counselor and Supervisor Victoria Gutbrod, MA, for regular counseling sessions. Tr. 23, 26. In November 2023, Gutbrod completed a questionnaire on behalf of Smith. Tr. 583–84. Gutbrod opined, in relevant part, that if Smith were working full time, her mental impairments or treatment would cause her to be absent from work 10–15 hours a week. Tr. 584.

*State agency opinions*[3]

In December 2022, David Deitz, Ph.D., reviewed Smith's record. Tr. 143–45. Regarding Smith's mental residual functional capacity (RFC),[4] Dr. Deitz found that Smith can perform simple, routine, repetitive tasks in a

---

[2]    Smith primarily challenges the ALJ's treatment of vocational expert testimony. Doc. 9. I have therefore only included in this report and recommendation a brief discussion of relevant opinion evidence and vocational expert testimony.

[3]    When a claimant applies for disability benefits, the State Agency creates a record. The record includes the claimant's medical evidence. A State Agency disability examiner and a State Agency physician or psychologist review the claimant's record and determine whether and to what extent the claimant's condition affects his or her ability to work. If the State Agency denies the claimant's application, the claimant can ask for reconsideration. On reconsideration, the State Agency updates the record and a second disability examiner and doctor review the file and make a new determination. *See, e.g.*, 20 C.F.R. § 404.1615.

[4]    An RFC is an "'assessment of'" a claimant's ability to work, taking his or her "limitations … into account." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002) (quoting 20 C.F.R. § 416.945). Essentially, it's the SSA's "description of what the claimant 'can and cannot do.'" *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 631 (6th Cir. 2004) (quoting *Howard*, 276 F.3d at 239).

setting "free of production-rate pace (as is found in assembly line work)." Tr. 145. Smith could have no interaction with the general public and occasional interaction with coworkers and supervisors. Tr. 145. She could work in a routine setting that "contemplates few changes in workplace tasks and duties." Tr. 145.

In March 2023, Nicole Sampson, Ph.D., reviewed Smith's record and adopted Dr. Deitz's findings. Tr. 153–54.

*Hearing testimony*

Smith, who was represented by counsel, and a vocational expert testified at both telephonic administrative hearings. After the November 2023 hearing, Smith's counsel filed a brief objecting to the vocational expert's testimony and requesting a supplemental hearing with a different vocational expert. Tr. 375. The ALJ granted Smith's request, and in April 2024 held a supplemental hearing with Deborah Lee, who was a different vocational expert. Tr. 37, 40.

The ALJ asked vocational expert Lee to determine whether a hypothetical individual with Smith's age, education, and work experience could perform work if the individual had the limitations assessed in the ALJ's RFC determination, described below. Tr. 47–48. Lee answered that such an individual could perform the following jobs: cleaner, kitchen helper, and laundry laborer. Tr. 48. When asked about workplace absenteeism, Lee said that arriving late or leaving early at times amounted to being absent, and stated that a worker could not be absent more than once a month. Tr. 51–52.

The ALJ and Smith's attorney asked follow-up questions, which I discuss more fully below.

After the hearing, Smith filed a post-hearing brief objecting to Lee's testimony and offering a vocational report authored by C. Kimball Heartsill. Tr. 378–80. The ALJ ultimately rejected Heartsill's report, overruled Smith's objection, and adopted Lee's testimony. Tr. 26–28.

**The ALJ's Decision**

The ALJ made the following findings of fact and conclusions of law:

> 1. The claimant has not engaged in substantial gainful activity since October 4, 2022, the application date (20 CFR 416.971 *et seq*.). Except that this finding recites the application date for the present claim, it adheres to that of the previous decision.
>
> 2. The claimant has the following severe impairments: depressive disorder, anxiety disorder, dysthymic disorder, mood disorder, autism/Asperger's disorder (20 CFR 416.920(c)). This finding departs from that of the previous decision, reflective of new or additional psychological diagnoses.
>
> 3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926). This finding adheres to that of the previous decision.
>
> 4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant is limited to

5

the performance of simple, routine tasks, conducted in a work setting free of fast-paced production requirements or strict production quotas, which setting is routine, in that it contemplates few changes in workplace tasks or duties, which setting contemplates occasional interaction with co-workers and supervisors, but no contact with the public. This finding adheres to that of the previous decision.

5. The claimant has no past relevant work (20 CFR 416.965). This finding adheres to that of the previous decision.

6. The claimant was … 28 years old, which is defined as a younger individual age 18–49, on the date the application was filed (20 CFR 416.963). Except that this finding recites the claimant's chronological age at the filing of the application, it adheres to that of the previous decision.

7. The claimant has at least a high school education (20 CFR 416.964). This finding adheres to that of the previous decision.

8. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968). This finding adheres to that of the previous decision

9. Considering the claimant's age, education, work experience and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969a). This finding adheres to that of the previous decision.

10. The claimant has not been under a disability, as defined in the Social Security Act, since October 4, 2022, the date the application was filed (20 CFR 416.920(g)). Except that this finding recites the application date for the current claim, it adheres to that of the previous decision.

Tr. 19–29.

**Standard for Disability**

Eligibility for social security benefit payments depends on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A).

An ALJ is required to follow a five-step sequential analysis to make a disability determination:

1.  Is the claimant engaged in substantial gainful activity? If so, the claimant is not disabled.

2.  Does the claimant have a medically determinable impairment, or a combination of impairments, that is "severe"? If not, the claimant is not disabled.

3.  Does the claimant's impairment meet or equal one of the listed impairments and meet the duration requirement? If so, the claimant is disabled. If not, the ALJ proceeds to the next step.

4.  What is the claimant's residual functional capacity and can the claimant perform past relevant work? If so, the claimant is not disabled. If not, the ALJ proceeds to the next step.

5.  Can the claimant do any other work considering the claimant's residual functional capacity, age, education, and work

experience? If so, the claimant is not disabled.
If not, the claimant is disabled.

20 C.F.R. §§ 404.1520, 416.920. *see Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 422 (6th Cir. 2008). Under this sequential analysis, the claimant has the burden of proof at steps one through four. *Jordan*, 548 F.3d at 423. The burden shifts to the Commissioner at step five "to prove the availability of jobs in the national economy that the claimant is capable of performing." *Id*. "The claimant, however, retains the burden of proving her lack of residual functional capacity." *Id*. If a claimant satisfies each element of the analysis and meets the duration requirements, the claimant is determined to be disabled. *Walters Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).

**Standard of review**

A reviewing court must affirm the Commissioner's conclusions unless it determines "that the ALJ has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Jordan*, 548 F.3d at 422. "'[S]ubstantial evidence' is a 'term of art'" under which "a court … asks whether" the "existing administrative record … contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) (citations omitted). The substantial evidence standard "is not high." *Id*. at 103. Substantial evidence "is 'more than a mere scintilla'" but it "means only[] 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*. (citations omitted). The Commissioner's "findings … as to any fact if supported by

8

substantial evidence [are] conclusive." 42 U.S.C. § 405(g); *Biestek*, 587 U.S. at 99.

A court may "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). Even if substantial evidence or a preponderance of the evidence supports a claimant's position, a reviewing court cannot overturn the Commissioner's decision "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). This is so because there is a "zone of choice within which" the Commissioner can act, without fear of judicial "interference." *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 605 (6th Cir. 2009) (quoting *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994)).

**Discussion**

*1. Smith has not shown that the ALJ's RFC is unsupported by substantial evidence*

Smith argues that the ALJ erred because her RFC assessment does not contain an absenteeism limitation. Doc. 9, at 1, 8–9.

The only medical opinion that arguably contained an absenteeism limitation was that of Smith's counselor, Victoria Gutbrod.[5] Tr. 584. The ALJ evaluated Gutbrod's opinion and found it only partially persuasive. Tr. 26. As

---

[5]    It's not clear that Gutbrod assessed an absenteeism limitation. *See* Tr. 584. Nevertheless, the ALJ assumed that Gutbrod had, Tr. 26, and therefore, so do I.

a result, the ALJ did not adopt any absenteeism limitations in the RFC. Tr. 22, 26. Smith doesn't challenge the ALJ's evaluation of Gutbrod's opinion and in fact claims that the ALJ's evaluation of Gutbrod's opinion "does not matter in this case." Doc. 12, at 4. Nevertheless, I note that the ALJ evaluated Gutbrod's opinion, including Gutbrod's assumed absenteeism finding; rejected this portion of Gutbrod's opinion; and assessed an RFC with no absenteeism limitations. Tr. 22, 26. Smith has not challenged this aspect of the ALJ's decision or any other portion of the ALJ's decision discussing and evaluating the medical evidence in the record. The ALJ's decision thus addresses the issue of absenteeism, and her RFC assessment omitting such a restriction is supported by substantial evidence.

Smith argues that an absenteeism restriction derives from vocational expert Lee's testimony. Doc. 9, at 8. Smith cites Lee's testimony that a typical employee could have no more than one work absence per month, *id.* (citing Tr. 52), and then points out that Smith at times during the relevant period had two medical appointments per month, *id.* From these facts, Smith reasons that "[b]ecause a medical appointment would occur during the work hour, … absenteeism is a limit in the ability to perform work; therefore medical appointment(s) equal relevancy for a step four (4) RFC finding." *Id.* at 9.

As already noted, the ALJ rejected the only opinion in the record finding that Smith would have absenteeism limitations and Smith doesn't challenge this finding.

Smith's argument that the ALJ should have nevertheless included an absenteeism restriction in her RFC assessment fails. Smith has provided no evidence—legal, vocational, or otherwise—to support her statement that a "medical appointment would occur during the work hour." This dooms Smith's argument from the start. While Smith asserts that many of her appointments in the record occurred during "the typical 8:00am-5:00pm time-frame," Doc. 12, at 4, she hasn't shown that Smith would have to work an eight-to-five schedule or that appointments outside this time-frame were or would be unavailable. Indeed, Smith admits that she twice had appointments "outside" the "typical 8:00am-5:00pm time-frame," *id.*, which indicates that such appointments were available if Smith had requested them. As another unit of this court has explained:

> there is no[] evidence that these appointments could not be scheduled around work hours…. As the Tenth Circuit has explained: "[P]laintiff's current extrapolation of how many days she must have missed from work based on her medical record is faulty ... in that it assumes she was required to miss entire days of work for each appointment." *Barnett v. Apfel*, 231 F.3d 687, 691 (10th Cir. 2000); *see also Pryor v. Comm'r of Soc. Sec.*, 2015 WL 12683977, at *7 (E.D. Mich.) ("Pryor has not established any reason to think that he is unable to attend physical therapy sessions after work, on the weekends, during lunch, or on some other schedule."), *report and recommendation adopted*, 2015 WL 6735336; *Leaverton v. Colvin*, 2013 WL 1316901, at *3 (N.D. Okla.) ("Plaintiff added up the number of doctor visits and phone calls to his doctor he made over the pendency of this case and argues that number of absences would preclude employment. Nothing in the record suggests an entire day off is necessary for

> each appointment or that appointments could not be scheduled around hours of employment."); *Brock v. Astrue*, 2008 WL 4104551, at *16 (W.D. Mo.) ("Further, the fact that a claimant must attend regular healthcare appointments does not necessarily indicate that she cannot work; there is nothing in the record to indicate that Brock could not schedule her appointments around her work schedule.").

*Chaney v. Comm'r of Soc. Sec.*, No. 5:18-cv-2769, 2020 WL 789189, at *9 (N.D. Ohio Feb. 18, 2020).

Next, Smith's argument that the ALJ should have sua sponte (1) calculated the number of days that Smith had medical appointments during some undetermined "work hour," and (2) evaluated whether she could still perform full-time work, is a non-starter for additional reasons. First, Smith has not cited legal authority stating that vocational expert's testimony on a general issue such as workplace absenteeism creates a claimant-specific RFC limitation that the ALJ must adopt. Nor has she cited legal authority that an ALJ is required to sua sponte connect medical appointments in the record and compare them with general vocational expert testimony. Rather, legal authority indicates otherwise. *See Chaney*, 2020 WL 789189, at *9 (rejecting an argument that the number of medical appointments a claimant has translates into an absenteeism limitation tied to vocational expert testimony on generally accepted workplace-absenteeism practices).[6]

---

[6]    In *Chaney*, the court rejected the claimant's argument regarding the ALJ's evaluation of a medical provider's opinion that the claimant would be absent due to medical treatment. 2020 WL 789189, at *9. Here, Smith has not

Second, at no time at either hearing did Smith's attorney—the same attorney representing her in federal court—raise this medical-appointment-absenteeism issue with the ALJ. Tr. 35–53, 54–79. Smith also failed to mention the issue in her pre-hearing brief, Tr. 372–73, her post-hearing brief, Tr. 377, and on appeal to the Appeals Council, Tr. 385–86. So despite numerous opportunities to do so, Smith has not preserved this issue for review. *See Watson v. Comm'r of the Soc. Sec. Admin.*, No. 4:25-cv-287, 2025 WL 2458765, at *7 (N.D. Ohio Aug. 27, 2025) (citing *Ramsey v. Comm'r of Soc. Sec.*, 973 F.3d 537, 545 (6th Cir. 2020) and *Maloney v. Comm'r of Soc. Sec.*, 480 F. App'x 804, 810 (6th Cir. 2012), for the proposition that "[i]t is axiomatic that 'a court should not consider an argument that has not been raised in the agency proceeding that preceded the appeal.'"), *report and recommendation adopted*, 2025 WL 3440542 (N.D. Ohio Dec. 1, 2025).

In her reply brief, Smith argues that absenteeism is not an RFC issue, but rather a step-five, vocational-expert issue in which the Commissioner, not Smith, carries the burden of proof. Doc. 12, at 2. This assertion in Smith's reply brief directly contradicts her arguments in her opening brief, in which she

---

challenged the ALJ's evaluation of Gutbrod's opinion and has expressly stated that she is *not* challenging the ALJ's evaluation of Gutbrod's opinion. Doc. 12, at 4. So Smith's position is even weaker than the argument the court in *Chaney* rejected. And Smith's attempts to distinguish *Chaney*, Doc. 12, at 2, are not persuasive. She claims that "[t]here is no proof that the VE in *Chaney* specifically responded to questions of medical appointments," Doc. 12, at 2, which may be true. But the vocational expert in Smith's case didn't "specifically respond to questions of medical appointments" either. Tr. 51–52.

characterized the absenteeism issue as a "step four (4) RFC" issue.[7] Doc. 9, at 9; *see also id.* at 1, 8 (referencing the ALJ's RFC finding when discussing absenteeism). Smith's attempt to change her argument in her reply brief fails. *See Island Creek Coal Co. v. Wilkerson*, 910 F.3d 254, 256 (6th Cir. 2018) ("Time, time, and time again, we have reminded litigants that we will treat an argument as forfeited when it was not raised in the opening brief.") (internal quotation marks and citation omitted).

Even if the Court were to consider Smith's new reply-brief argument, it would fail because Smith hasn't shown that this is a step-five issue. Smith's complaint that the ALJ "had the chance to question either [vocational expert Lee] or to subpoena [Smith's vocational expert, Mr. Heartsill], but did not take further action," Doc. 12, at 3, fails because the ALJ's RFC assessment did not include an absenteeism limitation. Tr. 22, 47–48. The ALJ asked Lee to consider Smith's age, education, and work experience and Smith's RFC, Tr. 47, which is all the regulations require. *See* 20 C.F.R. § 416.920(a)(4)(v) ("At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make

---

[7]     In fact, the RFC assessment is more like step 3.5 in the five-step sequential analysis, because an ALJ will use the RFC at steps four and five. *See* 20 C.F.R. § 416.920(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity…. We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps."), (e); *see also Rash v. Comm'r of Soc. Sec. Admin.*, No. 5:22-cv-01053, 2023 WL 4827852, at *7 (N.D. Ohio Mar. 28, 2023), *report and recommendation adopted*, 2023 WL 4825676 (N.D. Ohio July 27, 2023).

an adjustment to other work."); *Casey v. Sec'y of Health & Hum. Servs.*, 987
F.2d 1230, 1235 (6th Cir. 1993) ("It is well established that an ALJ may pose
hypothetical questions to a vocational expert and is required to incorporate
only those limitations accepted as credible by the finder of fact."). So Smith has
not shown that the lack of an absenteeism limitation in the ALJ's RFC is a
step-five issue for which the ALJ had the burden of proof.

> *2. Smith has not shown that the ALJ erred with respect to the vocational experts*

To recap, the ALJ's RFC assessment limited Smith, in relevant part, to
unskilled work with no more than occasional contact with supervisors and
coworkers. Tr. 22. At the second hearing, vocational expert Lee testified that a
hypothetical individual described by the ALJ could perform the following
unskilled jobs with the attendant numbers in the national economy: cleaner
(245,000 jobs), kitchen helper (377,000 jobs), and laundry laborer (72,000 jobs).
Tr. 48. Smith's attorney asked Lee how long a training period for unskilled jobs
would be. Tr. 49. Lee answered, "two weeks perhaps," and gave examples of
unskilled jobs that would require even less time. Tr. 49–50. Smith's attorney
asked Lee if she agreed that during the training period the worker would
"probably" be exposed to more than occasional contact with supervisors or
coworkers. Tr. 50–51. Lee said that she did not agree, and explained that a
worker wouldn't exceed occasional contact even during the training period. Tr.
51.

After the hearing, Smith's attorney filed a brief in which she "object[ed]" to Lee's testimony as to the number of occupations available for the jobs Lee had identified. Tr. 377. Smith attached a "vocational report" by vocational expert Heartsill, who, counsel explained, "corrects" the job numbers. Tr. 377, 378–80. Counsel also wrote that Heartsill "indicates that all unskilled occupations require more than occasional contact with coworkers and supervisors for training purposes," which, counsel argued, would mean that there would be no jobs that an individual described in the ALJ's RFC assessment could perform. Tr. 377, 378–80.

In her decision, the ALJ considered and rejected Heartsill's vocational opinion as follows:

> A vocational rehabilitation counselor, C. Kimball Heartsill, offered a vocational opinion, but cited only one of the three jobs described by the vocational expert. No limitations on speech were included in the residual functional capacity, rendering much of his analysis moot. For the sake of argument, acceptance of his figures for public interaction in the job of commercial cleaner would still leave 132,000 jobs nationally, and acceptance of his figures for public interaction in the job of kitchen helper would still leave 301,000 jobs nationally. In both cases, these would still be significant numbers of jobs. He indicates that kitchen helper imposes fast pace and production quotas, citing only anecdotal evidence for the proposition, while the testimony of Ms. Lee was to the contrary, and based on the Dictionary of Occupational Titles. For all of these reasons, this opinion is not persuasive.

Tr. 26. Later in her decision, the ALJ considered Smith's objections:

16

The claimant's representative objected to these job numbers [identified by vocational expert Lee] on the ground that the vocational expert's methodology for determining numbers of jobs is not reliable. The undersigned overrules this objection. The vocational expert has professional knowledge and experience in job placement. Note is made of the objection by the claimant's representative to the methodology and reporting of the numbers of jobs within the national and regional economies, as related by the vocational expert. It seems clear that the objection is addressed to the means selected by the federal government for gathering and publishing labor statistics, and to the calculations of the vocational expert at the hearing. As such, the objection flows both to the relevance of the statistics themselves and to the interpretation of those statistics by the vocational expert. It is noted that the vocational expert has been qualified as such by the Social Security Administration and that the very essence of the expert's appearance at these hearings is the employment of their professional experience, expertise, and acumen to filter the vagaries of the various hypothetical residual functional capacities first, through the touchstone of the Dictionary of Occupational Titles and second, through the "lens" of their own professional knowledge. Upon consideration of which, the undersigned finds no reason to reject the testimony of the vocational expert, and no authority to affect the manner in which the federal government collects and publishes labor statistics. The objection is overruled. Accordingly, the vocational expert's job information is found to be reliable.

The claimant's representative also objected to the jobs described as available, based on greater social requirements during the training phase of the job. However, the training phase is necessarily brief and truncated, particularly for unskilled work, and may last as little as two weeks [hearing testimony]. As such, it is as little reflective of the overall work setting as is the traditional two-week vacation. His own vocational expert (C19E), indicated only that

> the claimant "may find it difficult" to get through a training period. This objection is also overruled.

Tr. 28.

Smith argues that "the ALJ was completely incorrect in claiming counsel's objections 'flow[] both to the calculations of the vocational expert' and that [they were] an attack on the 'means selected by the federal government for gathering and publishing labor statistics.'" Doc. 9, at 11. Smith claims that "[t]o the contrary, Mr. Heartsill's vocational opinion specifically referenced the statistical data showing these occupations were not available." *Id*. Regardless of what language the ALJ used to characterize Smith's objection to Lee's testimony, it is clear that the ALJ rejected Smith's objections to it. Tr. 26, 28. Smith hasn't articulated what about her objections she believes the ALJ misconstrued in the passage above.[8]

Smith complains that Lee's testimony "is absent of statistical data" and is "based plainly upon her basic testimony claiming they were consistent with the [Dictionary of Occupational Titles (DOT)]." Doc. 9, at 11. But the Dictionary of Occupational Titles remains "a reliable source of information at step five."

---

[8]    In fact, in her reply brief, Smith argues that "Heartsill's assessment pointed out numerous flaws in [Lee's] calculations and job availability." Doc. 12, at 5. This argument is encapsulated by the ALJ's characterization of Smith objecting to "the statistics themselves and to the interpretation of those statistics by the vocational expert." Tr. 28. Moreover, in his report, Heartsill wrote that the vocational expert cited an "invalid" DOT number for the Industrial Cleaner position. Tr. 378. But the DOT number Heartsill cites was not quoted by either of the vocational experts at the hearings. Tr. 48, 73. So it is not clear what testimony Heartsill was referencing as to this point.

*O'Neal v. Comm'r of Soc. Sec.*, 799 F. App'x 313, 317 (6th Cir. 2020) (citing 20 C.F.R. § 404.1566(d)(1)). Smith argues that the ALJ improperly relied on the fact that "VE Lee has testified before." Doc. 9, at 12. But that is not what the ALJ wrote. *See* Doc. 28 (the ALJ explaining that Lee "has been qualified as [a vocational expert] by the Social Security Administration"). This was not error. *See Moats v. Comm'r of Soc. Sec.*, 42 F.4th 558, 562 (6th Cir. 2022) ("[W]hen a *qualified vocational expert* testifies that a person with the claimant's work experience and physical limitations could perform a significant number of jobs available in the national economy, the ALJ has a solid basis for denying disability benefits") (emphasis added) (citing *Biestek v. Berryhill*, 587 U.S. 97, 104–08 (2019)). Even if the ALJ had relied on the fact that Lee had testified before, that would not have been error, either. *See Moats*, 42 F.4th at 562 (explaining that a qualified expert's testimony is sufficient evidence to support the ALJ's finding "[e]specially so, we note, when the vocational expert is well-credentialed and 'has a history of giving sound testimony about job availability in similar cases.'") (quoting *Biestek*, 587 U.S. at 105).

Smith's additional arguments fail. She points out that in contrast to Lee's testimony, Heartsill opined that during the training period for the identified jobs, a worker would have more than occasional contact with supervisors or coworkers. Doc. 9, at 13; Tr. 379–80. She criticizes the ALJ for

evaluating this issue as an "objection" rather than under a different standard.[9]

Doc. 9, at 13. But this is how Smith herself characterized Heartsill's report. Tr.

377 (Smith's post-hearing brief characterizing itself as an "objection" to Lee's

testimony). Regardless, the ALJ did not err. The ALJ explained that the

training period for the unskilled jobs that Lee identified would be "brief and

truncated" and "may last as little as two weeks." Tr. 28, Tr. 49; *see, e.g., Rebecca*

*L. v. Comm'r of Soc. Sec.*, 617 F. Supp. 3d 256, 273 (D.N.J. 2022) (noting that

courts in that district "routinely" reject arguments that "an interaction level

during a probationary training period that briefly exceeds occasional

undermines a plaintiff's RFC") (citing *Torres v. Comm'r of Soc. Sec.*, No. 14-cv-

6178, 2015 WL 8328346, at *7 (D.N.J. Dec. 8, 2015); *see Cody H. v. Bisignano*,

No. 24-cv-3056, 2025 WL 1788474, at *16 (D. Minn. June 11, 2025), *report and*

*recommendation adopted*, 2025 WL 1787562 (D. Minn. June 27, 2025). The

ALJ also observed that Heartsill "indicated only that the claimant '*may* find it

difficult' to get through a training period." Tr. 28, 380 (emphasis added); *see*

---

[9]     Smith cites Social Security Ruling 00-4p, 2000 WL 1898704 (December
4, 2000), and suggests that the ALJ failed to comply with it when evaluating
Heartsill's report. Doc. 9, at 13–14. But on its face, this ruling addresses what
the ALJ must do when faced with a conflict between vocational expert
testimony and the DOT. Soc. Sec. Ruling 00-4p, 2000 WL 1898704, at *1 ("this
ruling emphasizes that before relying on VE … evidence to support a disability
determination or decision, our adjudicators must: Identify and obtain a
reasonable explanation for any conflicts between occupational evidence
provided by VEs … and information in the Dictionary of Occupational Titles
(DOT)"). Here, Smith has not identified a conflict between Lee's testimony and
the DOT, so she has not shown that Ruling 00-4p would apply. Even if Ruling
00-4p would apply, the ALJ complied with it when she discussed Heartsill's
report in relation to Lee's testimony and the DOT. Tr. 26, 28.

*Sias v. Sec'y of Health & Human Servs.*, 861 F.2d 475, 481 (6th Cir. 1988) ("if the [vocational] expert is unable to testify without qualification about the jobs a claimant can perform, the ALJ may not rely on his opinion") (citing *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988)).

Smith relies on *Sczepanski v. Saul*, 946 F.3d 152, 158–59 (2d Cir. 2020), in support of her argument. Doc. 9, at 14. In *Sczepanski*, the court remanded the ALJ's decision because the ALJ's RFC limited the claimant to missing one day of work per month, but the vocational expert testified that employers would not tolerate any absenteeism during a typical 90-to-120-day probationary period. 946 F.3d at 161–62. The ALJ relied on the vocational expert's testimony but ignored that expert's opinion about absences during the probationary period. *Id*. at 156. Here, in contrast, the ALJ discussed Heartsill's opinion about interaction during the short training period[10] and rejected it. Tr. 26, 28. Heartsill didn't say that Smith could not complete the training period— only that she "may find it difficult" to complete it. Tr. 28, Tr. 380. *Sczepanski* is not binding on this Court, and it is not on point.

Finally, Smith insists that "the facts presented [by Heartsill's report] show that the statistical data shows training for the occupations cited by VE Lee would take multiple days, and would exceed occasional contact." Doc. 9, at

---

[10]    Heartsill opined that most of the jobs would require a training period of 8.02 days (cleaner), 3.75 days (kitchen helper), and 12.03 days (laundry laborer). Tr. 379.

15 (citing Heartsill's report). But Heartsill's report did not cite any statistical data showing that a worker during a training period would exceed occasional contact. Tr. 379–80. For this finding Heartsill only referenced "[his] vocational opinion." Tr. 379. While Heartsill cited statistical data for his numbers regarding the percentage of workers in which "speaking" would be required[11] and the length of the training periods, Tr. 379, he did not link this data to his opinion regarding the frequency of interaction during the training period. Tr. 379. All told, the ALJ did not err when she rejected Heartsill's report.

**Conclusion**

For the reasons explained above, I recommend that the Court affirm the Commissioner's decision.

Dated: January 6, 2026

                                                    /s/ James E. Grimes Jr.
                                                    James E. Grimes Jr.
                                                    U.S. Magistrate Judge

**OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Court within 14 days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F.3d 520, 530–31 (6th Cir. 2019).

---

[11] In her reply brief, Smith criticizes the ALJ for rejecting Heartsill's report because the ALJ "claimed his opinion was on 'speech.'" Doc. 12, at 5 (citing Tr. 26). But this is true; Heartsill's report repeatedly cited the percentage of workers in the identified jobs who would be required to perform "speech" and "speaking." Tr. 379. The ALJ's characterization was accurate.