**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| KIMBERLY M. SMITH,<br><br>Plaintiff,<br><br>vs.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | ) | CASE NO. 1:25-cv-1085-MJH<br><br>JUDGE MICHAEL J. HENDERSHOT<br><br>**MEMORANDUM OPINION AND ORDER** |

Before the Court is the Report and Recommendation of Magistrate Judge James E. Grimes recommending that the Court affirm the decision of Defendant Commissioner of Social Security denying the application of Plaintiff Kimberly M. Smith for supplemental security income. [R.13]. Smith timely filed objections to the Report, [R.14], and the Commissioner responded, [R.15].

For the reasons below, the Court overrules Smith's objections, accepts and adopts the Report, and affirms the Commissioner's final decision.

## I. FACTS AND PROCEDURAL HISTORY

The Magistrate Judge's recitation of the medical and opinion evidence is not repeated here. For the purposes of this opinion, the Court discusses only evidence necessary to resolve Smith's objections. Record citations are to the electronically stamped CM/ECF document and the PageID number rather than any internal pagination.

### A. Smith's applications to the Social Security Administration

In October 2022, Smith filed an application for supplemental security income, alleging a disability onset date of August 27, 2021. [R.7 at 45]. In her application, Smith claimed disability due to autism spectrum, depression, and anxiety. [*Id.* at 336]. In December 2022, a psychological consultant, Dr. David Dietz, assessed Smith's residual functional capacity and found that she could perform "simple, routine, repetitive tasks, undertaken in a setting free of production-rate pace," requiring "no interaction [with] the public and only occasional interaction [with] coworkers and supervisors," and that "contemplates few changes in workplace tasks and duties." [*Id.* at 173]. The Social Security Administration denied Smith's application. [*Id.* at 167].

In January 2023, Smith moved for reconsideration, a second psychological consultant, Dr. Nicole Sampson, reached the same conclusion as Dr. Dietz, and the Social Security Administration denied Smith's application again. [*Id.* at 176, 182]. Smith then requested, and received, a hearing before an Administrative Law Judge, at which she was represented by counsel. [*Id.* at 202].

### B. Relevant evidence and hearing testimony

Before the Administrative Law Judge, Smith submitted records from her counselor, Ms. Victoria Gutbrod ("Gutbrod"). [*Id.* at 544–642]. Gutbrod opined that Smith's mental impairments or treatment would cause her to be absent from work 10–15 hours a week, if she worked full time. [*Id.* at 612]. These counseling records

reflect over three dozen appointments between Smith and Gutbrod over 21 months. [*Id.* at 544–609, 614–42].

Also at the hearing, the Administrative Law Judge posed a hypothetical to an impartial vocational expert Deborah Lee about whether an individual with Smith's age, education, and work experience could perform work if that individual had the same limitations as those set forth in Smith's functional-capacity evaluation. [*Id.* at 75–76]. Lee testified that an individual with those limitations could perform work as a commercial cleaner, kitchen helper, or laundry laborer. [*Id.* at 76]. Lee further testified that the training period to learn each of these positions would be about two weeks and that, during this training period, interaction with other employees or supervisors would be less frequent than "occasional." [*Id.* at 77–79]. Lee also testified that she would include tardiness—arriving late or leaving early—in her definition of absenteeism and that, on average, a worker could be absent "no more than one day per month." [*Id.* at 79–80].

After the hearing, Smith objected to Lee's testimony and submitted her own supplemental vocational expert report from C. Kimball Heartsill. [*Id.* at 405]. Heartsill's report cited statistics for workers in various job categories regarding the need for employees to speak on the job, interact with the public, and complete a training period. [*Id.* at 407]. With respect to employee training periods, Heartsill opined that "[a]ny individual experiencing difficulty interacting personally during these time periods may find it difficult to get through training successfully." [*Id.* at

408]. In his report, Heartsill also opined that "absenteeism should not exceed once per month." [*Id.*].

### C. The Administrative Law Judge's decision

After the hearing, the Administrative Law Judge found Smith not disabled. [*Id.* at 45–57]. The Administrative Law Judge found that Smith had the following severe impairments: depressive disorder, anxiety disorder, dysthymic disorder, mood disorder, and autism/Asperger's disorder. [*Id.* at 48]. The Administrative Law Judge then concluded that these impairments, or combination of impairments, did not meet or equal the severity necessary for a finding of disability. 20 C.F.R. § 404, Subpart P. [*Id.*] The Administrative Law Judge, citing to Smith's functional-capacity evaluation, reasoned that Smith could perform "simple, routine tasks, conducted in a work setting free of fast-paced production requirements or strict production quotas," that "contemplates few changes in workplace tasks or duties" and "occasional interaction with co-workers and supervisors, but no contact with the public." [*Id.* at 50]. The Administrative Law Judge further explained that the national economy includes many jobs that Smith could perform. [*Id.* at 55]. In reaching this decision, the Administrative Law Judge rejected Heartsill's report, overruled Smith's objection, and adopted Lee's testimony. [*Id.* at 54–56].

The Administrative Law Judge's decision became final when the Social Security Appeals Council declined further review. [*Id.* at 29–31]; *see* 20 C.F.R. § 404.981.

### D. The Report and Recommendation

Smith then filed this action. [R.1]. Her merits brief lists two legal issues for review:

1. Did the ALJ err by creating an RFC [residual functional-capacity evaluation] that is not supported by substantial evidence and thereafter finding plaintiff not disabled?

2. Did the ALJ err by overruling Smith's objections to Lee, failing to properly review Heartsill's opinion, and failing to resolve all vocational conflicts?

[R.9]. The Magistrate Judge issued a thorough Report and Recommendation, recommending that the Court affirm the Commissioner's decision. [R.13]. Smith timely filed objections, and the Commissioner responded that same day. [R.14, 15].

## II. STANDARD OF REVIEW

### A. Review of objections to a Magistrate Judge's Report

This Court reviews *de novo* those portions of the Magistrate Judge's Report challenged through objections. After this fresh look, this Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). *See, e.g.*, *Powell v. United States*, 37 F.3d 1499 (Table), 1994 WL 532926, at *1 (6th Cir. Sept. 30, 1994); *Orr v. Kelly*, No. 1:14-cv-2302, 2015 WL 5316216, at *2 (N.D. Ohio Sept. 11, 2015) (citing *Powell*, 1994 WL 532926, at *1). General objections to the Report do not trigger review. *See, e.g.*, *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995). A general objection that "merely restates the arguments previously presented" does not "alert the court to alleged errors on the part of the magistrate judge." *Aldrich v. Bock*, 327 F. Supp. 2d 743, 747 (E.D. Mich.

2004). Put another way, "[t]he objections must be clear enough to enable the district court to discern those issues that are dispositive and contentious." *Miller*, 50 F.3d at 380 (citing *Howard v. Sec'y of Health & Hum. Servs.*, 932 F.2d 505, 508–09 (6th Cir.1991)). "'[B]are disagreement with the conclusions reached by the Magistrate Judge, without any effort to identify any specific errors in the Magistrate Judge's analysis that, if corrected, might warrant a different outcome, is tantamount to an outright failure to lodge objections.'" *Arroyo v. Comm'r of Soc. Sec.*, No. 14-14358, 2016 WL 424939, at *3 (E.D. Mich. Feb. 4, 2016) (quoting *Depweg v. Comm'r of Soc. Sec.*, No. 14-11705, 2015 WL 5014361, at *1 (E.D. Mich. Aug. 24, 2015)) (citing *Howard*, 932 F.2d at 509). Alongside this specificity requirement, parties cannot "raise at the district court stage new arguments or issues that were not presented" to the Administrative Law Judge and the Magistrate Judge. *Murr v. United States*, 200 F.3d 895, 902 n.1 (6th Cir. 2000); *see also Swain v. Comm'r of Soc. Sec.*, 379 F. App'x 512, 517–18 (6th Cir. 2010).

**B. Review of social security decisions**

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The impairment must prevent the claimant from performing his or her previous work and any other work available in significant numbers in the region where the individual lives or in several regions of the country. *Id.* § 423(d)(2)(A).

In making a disability determination, the Administrative Law Judge performs a five-step sequential evaluation:

> 1. If the claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If the claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled. To be severe, the claimant must have a severe medically determinable physical or mental impairment, or a combination of impairments, that must have lasted or be expected to last for at least 12 months, unless it is expected to result in death.
>
> 3. If the claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment in Appendix 1 to Subpart P of Part 404, then the claimant is presumed disabled without further inquiry.
>
> 4. If the impairment does not meet or equal a listed impairment, the ALJ must assess the claimant's residual functional capacity and use it to determine if the claimant's impairment prevents him from doing past relevant work. If the claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. If the claimant is unable to perform past relevant work, he is not disabled if, based on his vocational factors and residual functional capacity, he is capable of performing other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520, 416.920; *see also Quisenberry v. Comm'r of Soc. Sec.*, 757 F. App'x 422, 426 (6th Cir. 2018) (citing *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997)). The claimant bears the burden of proof at steps one through four, while the "burden shifts to the Commissioner only at Step Five." *Walter*, 127 F.3d at 529.

Federal courts limit review of the Commissioner's decision only to whether it applied the correct legal standard and "substantial evidence" supports the decision. 42 U.S.C. § 405(g); *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854–55 (6th Cir. 2010). "Substantial evidence is less than a preponderance but more than a scintilla; it refers to relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014) (citing *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)). If substantial evidence supports the Commissioner's finding that the claimant is not disabled, it "must be affirmed even if the reviewing court would decide the matter differently . . . even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citation omitted).

## III. ANALYSIS

Smith raises five objections to the Magistrate Judge's Report. Smith's first three objections relate to the Administrative Law Judge's exclusion of an absenteeism limitation from Smith's residual functional capacity. Specifically, Smith contends that the Administrative Law Judge's functional-capacity evaluation should have included a limitation based on the frequency of her medical appointments and that, consequently, the Administrative Law Judge should have had the burden to show that many jobs exist despite that limitation. On that basis, Smith objects to the Magistrate Judge's findings (1) that Smith did not preserve the issue of absenteeism on appeal; (2) that Smith improperly raised a new argument in her reply brief regarding the Administrative Law Judge's burden of proof at step five of the disability

evaluation; and (3) that the Administrative Law Judge's functional-capacity evaluation was supported by substantial evidence. In her fourth and fifth objections, Smith challenges that Magistrate Judge's findings (4) that the Administrative Law Judge properly overruled Smith's objection to Lee's testimony; and (5) that the Administrative Law Judge properly rejected Heartsill's vocational expert opinion.

The Court considers each objection in turn.

### A. The Magistrate Judge correctly concluded that Smith did not preserve the issue of absenteeism on appeal

In her first objection, Smith argues that the Magistrate Judge erred when he concluded that Smith "did not preserve the issue of absenteeism during the Administrative process." [R.14 at 702]. In not only her first, but also her second and third objections, Smith argues that the frequency of her appointments with Gutbrod will cause her to miss work. To Smith, then, the Administrative Law Judge should have included an absenteeism limitation in her functional-capacity evaluation. In the Report, the Magistrate Judge determined that "at no time at either hearing did Smith's attorney . . . raise this medical-appointment absenteeism issue with the ALJ." [R.13 at 692]. Smith responds, first, that the Magistrate Judge should not have acted "*sua sponte*," [R.14 at 702], and, second, that she did, in fact, preserve the issue, [*id.* at 703]. The Court rejects both arguments.

#### 1. The Magistrate Judge did not raise issue preservation *sua sponte*

First, the Magistrate Judge did not raise this issue *sua sponte*. Rather, the Commissioner's merits brief in this Court flagged Smith's waiver:

> [N]either of the state agency reviewing psychologists found Plaintiff had any absenteeism-related limitations. The ALJ determined these findings were persuasive ***and Plaintiff did not argue otherwise, thereby forfeiting any such argument***.

[R.11 at 667 (emphasis added, internal citations omitted)]. Smith is mistaken to ascribe any error to the Magistrate Judge's conclusion finding the absenteeism issue waived.

#### 2. Smith did not preserve the absenteeism issue

Second, the Court agrees with the Magistrate Judge's conclusion that Smith did not raise the issue of absenteeism previously. Smith does not dispute the Magistrate Judge's finding that she did not mention absenteeism in her pre-hearing brief, [R.7 at 400–01], but points to (i) her counsel's questions to Lee at the hearing, [*id.* at 79–80], (ii) vocational evidence submitted with her post-hearing brief, [*id.* at 405–08], and (iii) her appeal to the Appeals Council, [*id.* at 413–14], to show that the Commissioner had notice about her absenteeism argument. [R.14 at 703]. The record reveals otherwise.

##### i. The Lee testimony

At the hearing, Smith's counsel posed two questions about absenteeism to Lee, but neither involved the critical question of whether Smith's potential need to be absent from work because of her medical appointments limited her functional capacity and, in turn, the possible jobs she could perform. [R.7 at 79–80]. On its face, the first question—"And for absenteeism, is tardiness and stuff like that, is that also included in absenteeism?"—elicited only general information about absenteeism and

did not relate to any absenteeism caused by Smith's medical appointments. [*Id.* at 79 ("When I look at the literature, it [tardiness] wasn't included, but I tend to include it.")]. The second question, again, did not refer to medical-appointment absenteeism, asking only what level of absenteeism "was typically allowed in the workforce." [*Id.* at 80]. Neither question Smith's counsel posed to Lee preserved the issue of *Smith's* need to be absent.

**ii. Post-hearing vocational evidence**

In her post-hearing objection, Smith submitted Heartsill's vocational report, [*id.* at 405–08], which she claims as evidence related to "the issue of absenteeism," [R.14 at 703]. But Smith's counsel wrote that he was "not objecting to [Lee's] opinions as it relates to being . . . absent . . . as these were based upon her experience and were also agreed upon as accurate by Mr. Heartsill." [R.7 at 405]. As such, Smith's post-hearing brief did not preserve the issue of Smith's specific needs to be absent.

**iii. Assignments of error on appeal**

Last, Smith argues that her appeal to the Appeals Council preserved the absenteeism issue. [*Id.* at 413–14]. Smith quotes her second and third assignments of error that "[t]he ALJ did not include all relevant limitations in the final [residual functional-capacity evaluation]" and "erred in finding occupations existed in the national economy that the claimant could perform." [*Id.* at 413]. Nowhere in her brief in support of her appeal, however, does Smith mention absenteeism. On the second assignment of error, Smith discusses the Administrative Law Judge's decision to overrule her objection to Lee's testimony. [*Id.* at 414]. On the third assignment of

error, Smith discusses Heartsill's opinion on frequency of interaction with coworkers and supervisors during a training period. [*Id.*]. Neither assignment of error develops the medical-absenteeism argument Smith now advances. "It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." *Frost v. Comm'r of Soc. Sec.*, No. 1:25-cv-1407, 2026 WL 607568, at *12 (N.D. Ohio Mar. 4, 2026) (quoting *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997)). Smith's appeal did not preserve the issue of absenteeism.

The Magistrate Judge did not err; Smith's first objection is overruled.

### B. The Magistrate Judge correctly concluded that Smith improperly raised new arguments in her reply brief

Smith's second objection relates to whether the issue of her absenteeism should be slotted into step four or step five of the Administrative Law Judge's five-step disability evaluation. Recall that step four considers a claimant's residual functional capacity and past relevant work, while step five assesses jobs available in the economy. Smith contests the Magistrate Judge's statement that her "reply brief directly contradicts her arguments in her opening brief, in which she characterized the absenteeism issue as a 'step four (4)'" issue. [R.13 at 692–93; R.14 at 703–04]. But Smith did change her tune. And despite this contradiction, the Magistrate Judge took on the new argument and concluded "it would fail because Smith hasn't shown that [absenteeism] is a step-five issue." [R.13 at 693]. As a result, Smith's second objection fails to "identify any specific errors in the Magistrate Judge's analysis that, if corrected, might warrant a different outcome." *Arroyo*, 2016 WL 424939, at *3.

Smith's merits brief characterized absenteeism arising from her medical appointments as solely a step-four issue, [R.9 at 652–54], while her reply brief assigned the burden of proof on absenteeism to the Commissioner at step five, [R.12 at 673]. That is, now Smith argues that the Commissioner must prove that the economy contains significant jobs that would accommodate Smith's supposed absenteeism limitation. Though Smith notes that she "is permitted to respond to Defendant[']s arguments" on reply, [R.14 at 704], the Court sees nothing in the Commissioner's merits brief that would provoke Smith's change of position. [*See* R.11]. Still, as discussed below, the Court agrees with the Magistrate Judge that as Smith's functional-capacity evaluation did not include an absenteeism limitation, Smith's step-five argument fails. [R.7 at 50, 75–76].

As a coda, Smith's second objection raises yet another new argument—that absenteeism "is truly ***both*** step four (4) and five (5)." [R.14 at 704 (emphasis added)]. That argument, too, is waived. *See Murr*, 200 F.3d at 902 n.1.

The Magistrate Judge did not err in his conclusion that Smith improperly raised a new argument on reply or that, in the alternative, Smith's new argument fails regardless. Smith's second objection is overruled.

### C. The Magistrate Judge rightly concluded the Administrative Law Judge's decision to exclude an absenteeism limitation from the functional-capacity evaluation rested on substantial evidence

In her third objection, Smith argues that the Magistrate Judge erred by "ignor[ing]" that, in Smith's estimation, the Administrative Law Judge did not properly consider absenteeism when evaluating her residual functional capacity.

[R.14 at 704]. Smith points to Gutbrod's counseling records to support the claim that her frequent therapy appointments raises the "question of whether jobs could be performed with the rate of treatment" she undertook in the past. [*Id.* at 705]. Taken together, Smith argues (i) that the Administrative Law Judge should have included an absenteeism limitation in her functional-capacity assessment; and (ii) that the Administrative Law Judge did not meet her burden at step five of showing that jobs exist in significant numbers with such an absenteeism limitation. [*Id.*]. Although the Magistrate Judge concluded correctly that Smith failed to preserve the issue of absenteeism on appeal, for the sake of completeness, the Court will dispose of Smith's third objection.

#### 1. The Administrative Law Judge properly considered evidence about absenteeism

The Magistrate Judge correctly rejected Smith's arguments that the Administrative Law Judge did not properly consider absenteeism in her functional-capacity evaluation. [R.13 at 688–94]. As an initial matter, "there is no legal requirement for an ALJ to explain each limitation or restriction he adopts or, conversely, does not adopt[.]" *Smith v. Comm'r of Soc. Sec.*, No. 5:11-cv-2104, 2013 WL 1150133, at *11 (N.D. Ohio Mar. 19, 2013). But here, the Administrative Law Judge *did* address absenteeism in finding Gutbrod's medical opinion only "partially persuasive," noting that the limitations that Gutbrod identified, including absenteeism for full-time work, were "entirely speculative." [R.7 at 54]. Smith says that this finding "is independent to the issue raised here" because the "reasoning provides no direct explanation as to why absenteeism was excluded." [R.14 at 705,

n.1]. Yet Smith does not appreciate that "substantial evidence supports the omission of such a limitation," where no evidence supports such a limitation apart from a rejected medical opinion and Smith's own statements. *Alvarado v. Colvin*, No. 3:15-cv-102, 2016 WL 825654, at *6 (N.D. Ohio Mar. 3, 2016).

Furthermore, by listing her therapy appointments with Gutbrod, Smith "asks this Court to simply *assume* that she needed the number of appointments" that she attended. *Beck v. Comm'r of Soc. Sec.*, No. 4:19-cv-2320, 2020 WL 5417536, at *3 (N.D. Ohio Sept. 10, 2020) (emphasis in original). Based on that raw number, Smith then assumes that the frequency of her appointments "exceed[s] the [absenteeism] threshold discussed by the vocational expert," that is, one day each month. [R.14 at 704]. "But in case after case in the Social Security context, it is standard operating procedure to *require* evidence to support subjective opinions and information." *Beck*, 2020 WL 5417536, at *3 (emphasis in original). Here, Smith has essentially declared that the number of her medical appointments speaks for itself without offering evidence that the necessity and frequency of those appointments affected her ability to perform full-time work. As the Magistrate Judge explained, nothing requires the Administrative Law Judge "to *sua sponte* connect medical appointments in the record and compare them with general vocational expert testimony." [R.13 at 691].

#### 2. The Administrative Law Judge was not obliged to consider absenteeism at step five where Smith did not carry her own burden at step four

As the Court has mentioned in Part III.B., the Administrative Law Judge need not prove at step five that the economy contains jobs compatible with Smith's medical

appointments because Smith's functional-capacity evaluation lacked any absenteeism limitation. As the regulation notes, in relevant part, "At the fifth and last step, ***we consider our assessment of your residual functional capacity*** and your age, education, and work experience to see if you can make an adjustment to other work." 20 C.F.R. § 416.920(a)(4)(v) (emphasis added). Said another way, "an ALJ . . . is required to incorporate only those limitations accepted as credible by the finder of fact." *Casey v. Sec'y of Health & Hum. Servs*., 987 F.2d 1230, 1235 (6th Cir. 1993). Here, the fact-finder did not find Smith's functional capacity limited by her medical appointments. Again, Smith's effort to shift the burden of proof on absenteeism to the Administrative Law Judge fails.

The Court also rejects Smith's argument that the Magistrate Judge's evaluation of the Administrative Law Judge's determination represents a "*post hoc*" justification. [R.14 at 705]. "The Sixth Circuit has instructed that if a district court finds the ALJ's decision is supported by substantial evidence, it need not consider a *post-hoc* rationalization objection." *Moore v. Comm'r of Soc. Sec.*, No. 3:23-cv-979, 2024 WL 3197570, at *3 (N.D. Ohio June 27, 2024) (citing *Pasco v. Comm'r of Soc. Sec.*, 137 F. App'x 828, 847 (6th Cir. 2005)). Nor does a Magistrate Judge "engage in a *post-hoc* rationalization by simply identifying other evidence in the record that supports the ALJ's analysis." *Id.* at *4; *see also Pasco*, 137 F. App'x at 847; *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 159 (6th Cir. 2009) (citation omitted); *Oslavic v. Comm'r of Soc. Sec.*, No. 4:25-cv-39, 2026 WL 776124, at *7 (N.D. Ohio Mar. 19, 2026) (citation omitted).

In his Report, the Magistrate Judge explained why Smith's unsupported statement that her "medical appointment would occur during the work hour" "doom[ed] . . . Smith's argument from the start." [R.13 at 690]. To be sure, the Administrative Law Judge may not have explicitly stated that Smith failed to connect the frequency of her appointments with vocational expert testimony on absenteeism, but the decision still built a "logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011). No "principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result." *Shkabari v. Gonzales*, 427 F.3d 324, 328 (6th Cir. 2005) (quotations and citations omitted). As the Court can reasonably discern why the Administrative Law Judge's functional-capacity evaluation excluded absenteeism, the Court may uphold the Administrative Law Judge's decision.

The Administrative Law Judge's functional-capacity evaluation rests on substantial record evidence, and the Magistrate Judge's reasoning contains no *post-hoc* justification. Smith's third objection is overruled.

### D. The Magistrate Judge did not err in concluding that the Administrative Law Judge properly overruled Smith's objections to Lee's hearing testimony

In her fourth objection, Smith argues that the Magistrate Judge erred when he found that the Administrative Law Judge properly overruled Smith's objections to Lee's testimony. [R.14 at 705]. According to Smith, Lee's hearing testimony lacked statistical data to support her opinions on the frequency of interaction with coworkers

and/or supervisors during an occupation's training period. [*Id.* at 705–06]. This fourth objection largely "state[s] a disagreement with a magistrate's suggested resolution, or simply summarizes what has been presented before," and the Court need not revisit these points. *Aldrich*, 327 F. Supp. 2d at 747. Smith also contends that the Magistrate Judge erred when he overlooked the case law cited in Smith's merits brief. The Court rejects these arguments.

#### 1. The Report's treatment of the Administrative Law Judge's decision was not error

First, Smith takes issue with the Magistrate Judge's conclusion that "[r]egardless of what language the ALJ used to characterize Smith's objection to Lee's testimony, it is clear that the ALJ rejected Smith's objections to it." [R.14 at 706 (citing R.13 at 697)]. Smith argues that the Administrative Law Judge must provide a "*logical* response to the objection, and that did not occur here." [*Id.* (emphasis in original)]. But as the Magistrate Judge writes, Smith "hasn't articulated what about her objections she believes the [Administrative Law Judge] misconstrued" and simply disagrees with the Administrative Law Judge's decision. [R.13 at 697].

In addition, Smith challenges the Magistrate Judge's characterization of the Dictionary of Occupational Titles as "a reliable source of information." [R.14 at 706]. While Smith argues that the Dictionary "does not speak to how much contact" with other coworkers or supervisors a job may require, [*id.*], the Magistrate Judge made no such claim otherwise. Rather, in response to the contention in Smith's merits brief that Lee's testimony "is absent of statistical data," [R.9 at 656], the Magistrate Judge wrote only that Lee relied on the Dictionary and that the Dictionary "remains 'a

reliable source of information at step five.'" [R.13 at 697 (quoting *O'Neal v. Comm'r of Soc. Sec.*, 799 F. App'x 313, 317 (6th Cir. 2020))]. Based on that single sentence, Smith attributes a litany of errors to the Magistrate Judge that are unsupported. As this objection depends on Smith's misreading of the Report, the Magistrate Judge's "validation of the ALJ decision" was not in error.

### 2. The Magistrate Judge did not go astray in rejecting Smith's cited cases

Second, Smith argues that "the Magistrate completely ignored Plaintiff's citations . . . showing that more than occasional contact during training *does eliminate all work*." [R.14 at 708 (emphasis in original).] Of course, "[t]here is no requirement that an opinion quote from, analyze, or address every case cite mentioned by the parties." *Armengau v. Warden, London Corr. Inst.*, No. 2:19-cv-01146, 2022 WL 17484358, at *28 n.21 (S.D. Ohio Dec. 7, 2022). This principle applies to Social Security cases as much as any other. *See Wood v. Kijakazi*, No. 1:20-cv-323, 2023 WL 2664738, at *7 (E.D. Tenn. Mar. 28, 2023), *aff'd sub nom. Wood v. Comm'r of Soc. Sec.*, No. 23-5494, 2024 WL 400232 (6th Cir. Feb. 2, 2024). That the Magistrate Judge did not expressly address certain cases cited by Smith in her merits brief does not entitle her to remand.

Even so, Smith's cases are neither as persuasive as she believes nor as factually "identical" as she claims. [R.14 at 709]. In both *Matthew H.* and *McAfee*, the Court "addressed the effect of an RFC that precludes over-the-shoulder supervision during the probationary period," not Smith's own limitation to occasional interaction. *Matthew H. v. Comm'r of Soc. Sec.*, No. 3:20-cv-0241, 2022 WL 2255376,

at *5 (S.D. Ohio June 23, 2022); *McAfee v. Comm'r of Soc. Sec.*, No. 3:19-cv-125, 2020 WL 5810004, at *4 (S.D. Ohio Sept. 30, 2020). As such, Smith's general proposition that "occasional contact during training *does eliminate all work*" lacks support in her own citations. [R.14 at 708 (emphasis in original)]. By comparison, the cases cited in the Report considered the question of "whether an interaction level during a probationary training period that briefly exceeds occasional undermines a plaintiff's" residual functional capacity. *Rebecca L. v. Comm'r of Soc. Sec.*, 617 F. Supp. 3d 256, 273 (D.N.J. 2022); *see also Cody H. v. Bisignano*, No. 24-cv-3056, 2025 WL 1788474, at *16 (D. Minn. June 11, 2025). Moreover, unlike Smith's cases, which depended on unequivocal testimony from vocational experts that the claimants would be unable to withstand a probationary period, the cases cited in the Report involved qualified vocational testimony akin to Heartsill's opinion that Smith "may find it difficult" to complete a probationary period. *Compare McLaughlin v. Comm'r of Soc. Sec.*, No. 3:17-cv-424, 2019 WL 125761, at *3 (S.D. Ohio Jan. 8, 2019) *and McAfee*, 2020 WL 5810004, at *4, *with Rebecca L.*, 617 F. Supp. 3d at 273, *and Cody H.*, 2025 WL 1788474, at *16. In her objection, Smith cites to additional cases "to [c]ounter the cases brought up by the Magistrate," but as the objection relates to the Magistrate Judge's treatment of the cases cited in her opening brief, the Court disregards these new cases.

The Court finds no error in the Magistrate Judge's decision to discount certain case law or to refer to analogous out-of-circuit decisions.

### 3. The Magistrate Judge did not misanalyze *Sczepanski*

Last, Smith argues that the Report "does not properly apply" the decision in *Sczepanski v. Saul*, 946 F.3d 152 (2d Cir. 2020). [R.14 at 709]. At step five of her decision, the Administrative Law Judge rejected Smith's objection to "the jobs described as available, based on greater social requirements during the training phase of the job." [R.7 at 56]. Based on both Lee and Heartsill's opinions, the Administrative Law Judge concluded that "the training phase is necessarily brief and truncated" and "little reflective of the overall work setting." [*Id.*]. Smith contrasts this with the Second Circuit's holding in *Sczepanski* that a claimant's ability to complete a probationary period was relevant to her disability status. [R.14 at 709 (citing *Sczepanski*, 946 F.3d at 158–59)].

First, as the Magistrate Judge wrote, "*Sczepanski* is not binding on this Court." [R.13 at 700.] Even if *Sczepanski* applied, therefore, the Magistrate Judge would not need to follow it. Second, as the Magistrate Judge points out, when overruling an objection along these lines, the Administrative Law Judge noted that Heartsill's report stated only that Smith "may find it difficult" to complete a probationary period. [R.7 at 56]. That is, unlike *Sczepanski*, where the Administrative Law Judge "did not mention probationary periods in its written decision," 946 F.3d at 156, here, the Administrative Law Judge addressed, then rejected, Heartsill's opinion about Smith's ability to complete a training period. [R.7 at 56]. That rejection finds support in this Circuit's precedent affirming that if a vocational expert is "unable to testify without qualification about the jobs a claimant can perform, the ALJ may not rely on his

opinion." *Sias v. Sec'y of Health & Hum. Servs.*, 861 F.2d 475, 481 (6th Cir. 1988) (citing *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988)). Smith also scores no points when she accuses the Magistrate Judge of "*sua sponte*" finding that Heartsill's opinion on a probationary period "is vague and therefore his opinion is irrelevant." [R.14 at 709]. Smith's ventriloquy misses the mark. The Report never asserts that the "vagueness" of Heartsill's opinion bears on the Administrative Law Judge's decision to overrule Smith's objection. [R.13 at 699–700].

Smith's fourth objection is overruled.

### E. The Magistrate Judge correctly concluded that the Administrative Law Judge properly rejected Smith's vocational expert's opinion

In her fifth and final objection, Smith objects that the Magistrate Judge did not consider whether the Administrative Law Judge "properly address[ed]" Heartsill's opinion. [R.14 at 710]. As Smith sees it, the Administrative Law Judge wrongly treated Heartsill's report as a "medical opinion." [*Id.*] Similarly, Smith claims that the Administrative Law Judge improperly "rejected" Heartsill's opinion because she thought it was about the amount of "speech" required in each job, rather than the frequency of interaction with coworkers and supervisors. [*Id.*] Both arguments are contradicted by the record.

First, the Court does not know why Smith suggests that the Administrative Law Judge treated Heartsill's opinion as a "medical opinion." [*Id.*]. The decision, which Smith cites in her objection, explains that Heartsill "offered a vocational opinion" and that the opinion was "not received of an acceptable medical source." [R.7 at 54]. Smith furnishes no additional support for this claim.

Second, in the Administrative Law Judge's decision, she writes that because no limitations "on speech" were included in Smith's functional-capacity evaluation, "much of" Heartsill's analysis is "moot." [*Id.*]. Even so, the Administrative Law Judge then considered Heartsill's job figures "[f]or the sake of argument." [*Id.*] In response, Smith argues that "[n]othing in [Heartsill's] opinion was about 'speech' as the ALJ claimed." [R.14 at 710]. Instead, Smith suggests Heartsill's opinion related only to "length of training" and the amount of interaction required with coworkers and supervisors during a training period. [*Id.*] Smith is off base. In his report, Heartsill cites statistical data regarding "speech" or "speaking" required of workers in each job that he considered. [R.7 at 407]. Furthermore, contrary to Smith's objection, the Administrative Law Judge did not "reject[] him on 'speech'" alone and, in fact, did consider Heartsill's opinion on the number of available jobs. [R.14 at 710]. As the Magistrate Judge determined, the Administrative Law Judge rejected Heartsill's opinion because he "did not link" his cited data about speech and training periods "to his opinion regarding the frequency of interaction during the training period." [R.13 at 701].

Smith's fifth objection is overruled.

## IV. CONCLUSION

For the foregoing reasons, Smith's objections to the Report and Recommendation are **OVERRULED**, the Report and Recommendation is **ACCEPTED** and **ADOPTED**, and the final decision of the Commissioner is **AFFIRMED**. This case is **DISMISSED**.

**IT IS SO ORDERED**.

Dated: September 30, 2026

*s/ Michael J. Hendershot*

**HON. MICHAEL J. HENDERSHOT**
**UNITED STATES DISTRICT COURT**